**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **SAMANTHA VANTERPOOL** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 3:13-cv-513** |
| | : | |
| **KENNETH T. CUCCINELLI, II,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **CHARLES E. JAMES, Jr.** | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF'S MEMORANDUM OF**
**POINTS AND AUTHORITIES IN SUPPORT OF HER**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

NOW COMES, the Plaintiff, Samantha Vanterpool, by counsel, and responds to the Defendants' Motion to Dismiss her Amended Complaint. For the reasons set forth below, and any others that may be presented at any oral argument, this Court should deny the Defendants' Motion to Dismiss.

## II. SUMMARY OF ARGUMENT

A. Ms. Vanterpool Was Speaking Out as a Private Citizen on Matters of Public Concern.

B. Ms. Vanterpool's Interest in Speaking Out About Matters of Public Concern Outweighed the Government's Interest in Providing Effective and Efficient Services to the Public.

C. Ms. Vanterpool Does Not Fit Within the *Elrod-Branti* Exception.

D. Ms. Vanterpool's Statement Was a Substantial Factor in Her Termination.

    E. Ms. Vanterpool's Refusal to Tell Her Supervisor Who Posted the Comment Was Protected by the First Amendment.

F. The Defendants Are Not Entitled to Qualified Immunity Because Ms. Vanterpool's Right to Comment on About a Newspaper Article Was Clearly Established at the Time She Was Terminated.

G. Mr. Cuccinelli is Personally Liable.

H. Ms. Vanterpool Was Constructively Discharged.

I. Plaintiff Should Be Allowed to Amend Her Complaint.

## III. STANDARD OF REVIEW UNDER RULE 12(b)(6)

In evaluating a motion to dismiss, the Court applies tried and true principles, giving the plaintiff the benefit of all inferences. First, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 & n. 8 (2007).

Second, in ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiff and the allegations are taken as true. Scheuer v. Rhodes, 416 U.S. 232 (1974). A court should not dismiss a complaint even if it appears on the face of the pleadings that the chance of recovery is very remote. Scheuer, 416 U.S. at 236.

Third, a complaint, neither can the plaintiff's complaint be subjected to a heightened standard of pleading. Twombly, 550 U.S. at 570.

Fourth, in her complaint, the plaintiff is only required to plead a facially plausible claim, which is one that allows the court to draw reasonable inferences that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

In ruling on a Rule 12(b)(6) motion, a court may consider documents outside of the pleadings without converting the motion to one for summary judgment so long as the documents are integral to and explicitly relied on in the complaint. Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## IV. ARGUMENT

### A. Ms. Vanterpool Was Speaking Out as a Private Citizen on Matters of Public Concern

The Defendants argue that Ms. Vanterpool was not speaking out as a private citizen and that the speech was not a matter of public concern the speech at issue whether speech is a matter of public concern**.**

The following is the speech in question:

> Love it! Let the egomaniac [referring to the Attorney General] take the BS out of state. While Bolling is helping the GOP, Cuccinelli is promoting Cuccinelli. For example, he is NEVER in the AG's office and solely uses the position for self promotion. He has issue [sic] a policy that NO AG employee can talk to the media about anything at anytime. To date, he hasn't endorsed Romney. Good job ibbie!

Exhibit 2 of Amended Complaint at p. 2.

Contrary to Defendants' arguments, the comments to the newspaper article shows Ms. Vanterpool was speaking out as a private citizen. The comments were not related to her job, and her comment about the AG's media policy did not make Ms. Vanterpool a public employee for the purposes of her speech about a political fight between two GOP candidates vying for the gubernatorial nomination of the Virginia GOP.

The speech must be taken as a whole and cannot be dissected and taken apart to determine, which parts, if any, are protected. The First Amendment applies to the entire speech. Riley v. Nat'l Fed'n of Blind, 487 U.S. 781, 796 (U.S. 1988).

Second, Ms. Vanterpool's speech clearly related to a matter of public concern dealing with political infighting between two rivals for the GOP nomination. See, e.g. Bland v. Roberts, 2013 U.S. App. LEXIS 19268 at *48 (4th Cir. Sept. 18, 2013); McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995). Comments about politicians and the public trust deserve the highest level of protection. That the issues commented on by Ms. Vanterpool were matters of public concern was emphasized by the article in the November 1, 20013 edition of the Virginian-Pilot newspaper, attached hereto as Exhibit 1.

**B. Ms. Vanterpool's Interest in Speaking Out Matters of Public Concern Outweighed the Government's Interest in Providing Effective and Efficient Services to the Public**

In considering whether the employee's interest in speaking upon the matter of public concern outweigh the government's interest in providing effective and efficient services to the public, the following factors are relevant: whether the employee's speech (1) impairs discipline by superiors; (2) impairs harmony among co-workers; (3) has a detrimental impact on close

working relationships; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is communicated to the public or to co-workers in private; (8) conflicts with the responsibilities of the employee within the agency; and (9) makes use of the "authority and public accountability the employee's role entails." McVey v. Stacy, 157 F. 3d 271, 278 (4th Cir. 1998).

Application of the 9 factors show that the Ms. Vanterpool's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public.

Despite the Defendants' allegations at page 8 of their Memorandum, Ms. Vanterpool's comments caused no disruption to the office, Compl. ¶ 32, and at this stage the Plaintiff's allegations must be taken for true and cannot be controverted by the Defendant's bald statements that the comments directly undermined the operation of the agency. There is no evidence to show that Ms. Vanterpool's comments did anything in particular to disrupt the office or would have made it more difficult for Attorney General, or others to perform their work efficiently. Bland v. Roberts, 2013 U.S. App. LEXIS 19268 at *50, *citing* Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 356 (4th Cir. 2000).

**C. Ms. Vanterpool Does Not Fit Within the *Elrod-Branti* Exception**

Ms. Vanterpool has alleged that her termination was also impermissibly based on her political affiliation and non-association with the Attorney General.

Where there is an allegation that a public employee was discharged because of her political beliefs and/or affiliation, such claims must be analyzed under the principles established by Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507(1980).

These cases make clear that the First Amendment generally bars the firing of public employees because they were not affiliated with a particular political party or candidate. Knight v. Vernon, 214 F.3d 544, 548 (4th Cir. 2000). Such firings impose restraints "on freedoms of belief and association," Elrod, 427 U.S. at 355. Nevertheless, patronage dismissals of those public employees occupying policymaking positions are not violative of the First amendment. Jenkins v. Medford, 119 F.3d 1156, 1161 (4th Cir. 1997) (*en banc*).

Relying on the Elrod-Branti line of cases, the Defendants allege that Ms. Vanterpool could be dismissed without violating the First Amendment because she occupied a confidential/policy making position.

The Supreme Court in Elrod created a narrow exception "to give effect to the democratic process" by allowing patronage dismissals of those public employees occupying policymaking positions. Jenkins v. Medford, 119 F.3d 1156, 1161 (4th Cir. 1997) (en banc). This exception served the important government goal of assuring the implementation of policies of a new administration, policies presumably sanctioned by the electorate. Id.

Contrary to the Defendants's arguments, Ms. Vanterpool did not occupy a confidential or policymaking or public contact role in the AG' office. *See* Compl. ¶8. She was merely a line attorney. Compl. ¶44. This makes the Defendants' case especially weak. Bland v. Roberts, 2013 U.S. App. LEXIS 19268, at *50 *citing* McVey v. Stacy, 157 F.3d 271, 278 (4th Cir. 1998).

In the AG's office, Ms. Vanterpool occupied the lowest rung. First, there was the Attorney General. Then there was the Chief Deputy Attorney General; followed by Section Chiefs; then Senior Assistant Attorneys General; and finally Attorneys General, like Ms. Vanterpool.

Furthermore, Ms. Vanterpool's case is unlike Jenkins v. Medford, 119 F. 3d 1156, 1161 (4th Cir. 1997), and her role as a line attorney cannot be compared to the position of deputy sheriffs in the Jenkins case. Her case is more akin to the Bland case, *supra*.

In Branti, the Supreme Court modified the Elrod test under which the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position but whether the hiring authority can demonstrate that party affiliation or political allegiance is an appropriate requirement for the effective performance of the public office involved. Bland 2013 U.S. App. LEXIS 19268 at *11 (citations omitted).

Thus, the question is whether the Defendants can demonstrate that party affiliation or political allegiance is an appropriate requirement for the effective performance of the public office the position of Assistant Attorney General.

The Defendants appear to be urging a per se rule on this Court that all Assistant Attorneys General occupy a confidential/policy making position and can be fired, no questions asked. Such a rule would be too broad and would give the power to the next occupant and each succeeding occupant Virginia Attorney General to fire each every attorney in the Office of Attorney General, none of whom would have recourse because of the too broad application of the Elrod-Branti rule.

Under Branti, the Defendants cannot demonstrate that party affiliation or political allegiance is an appropriate requirement for the effective performance of the public office the position of Assistant Attorney General.

The Fourth Circuit has provided guidance in answering these questions through a two part test adopted in Stott v. Haworth, 916 F.2d 134 (4th Cir. 1990). The first part is whether "the plaintiff's position involves government decisionmaking on issues where there is room for political disagreement on goals or their implementation." Bland, 2013 U.S. App. LEXIS 19268 at *12 *citing* Stott, 916 F.2d at 141. If the position involves decisionmaking concerning political disagreements, then the next step is to examine the particular responsibilities of the plaintiff's position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation [or political allegiance] is an equally appropriate requirement." Stott, 916 F. 2d at 142.

The first step of the inquiry requires the Court to examine the issues dealt with by the employee "at a very high level of generality," while "[t]he second step requires a much more concrete analysis of the specific position at issue." Bland 2013 U.S. App. LEXIS 19268 at *12 *citing* Fields, 566 F.3d at 386.

At the second step, the courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office. Bland 2013 U.S. App. LEXIS 19268 at *13, *citing* Stott, 916 F.2d at 142.

In this regard, courts **focus on the job description for the position in question** (emphasis added) and "only look past the job description where the plaintiff demonstrates some systematic unreliability, such as where the description has been manipulated in some manner by officials looking to expand their political power." Nader v. Blair, 549 F.3d 953, 961 (4th Cir. 2008).

In this case, Ms. Vanterpool never received a job description. As a supporter of the previous attorney general, Bob McDonald, Ms. Vanterpol was placed in the position from which she was terminated by Mr. James.

In the absence of a job description, the next best option to determine Ms. Vanterpool's position duties is to look at her performance evaluation, Exhibit 1. A review of the duties and tasks in the evaluation show that Ms. Vanterpool engaged in ordinary legal work to include attending grievance hearings, defending lawsuits, and providing routine legal advice. None of her duties and responsibilities included policymaking or being a confidante to Mr. Cuccinelli or his deputies.

Under the analysis set forth in Stott, Ms. Vanterpool did not occupy a confidential/ policymaking role because her position as an assistant attorney general did not involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation. This negative answer should end the analysis without the need to go to step two.

Even if the analysis were to proceed to step 2, however, an examination of Ms. Vanterpool's position shows that it does not resemble a policymaker, one who is privy to confidential information, or a communicator, or some other office holder whose function is such that party affiliation or political allegiance is an equally appropriate requirement.

In her position, Ms. Vanterpool provided legal analysis of special education cases/issues and represented the agency in administrative proceedings and court, among other things. As the her evaluation shows, she was never called upon to formulate or draft any policy for the AG or to draft advisory opinions or to consult with the Chief Deputy or Deputy AG on any policy matter.

As an Assistant Attorney General, Ms. Vanterpool never advised the Attorney General on policy matters nor was she involved in communicating the Attorney General's policies or positions to the public. *See* Bland 2013 U.S. App. LEXIS 19268 at *11, and the Attorney General did not rely on Ms. Vanterpool for assistance in implementing his policies.

The Defendants have not established as a matter of law that political loyalty or party affiliation was an appropriate requirement for Ms. Vanterpool's performance of her job nor have they demonstrated that Ms. Vanterpool's duties resembled those of "a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation or political allegiance is an equally appropriate requirement." Stott, 916 F.2d at 142.

Also the Defendants have not demonstrated that political allegiance was an appropriate requirement Ms. Vanterpool's job. Bland 2013 U.S. App. LEXIS 19268 at *27.

### D. Ms. Vanterpool's Statement Was a Substantial Factor in Her Termination

The plaintiff bears the initial burden of proving that her exercise of her First Amendment rights was a substantial or motivating' factor in the employer's decision to terminate her. Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir. 1993). If the plaintiff satisfies that burden, the defendant will avoid liability if he can demonstrate, by a preponderance of the evidence, that she would have made the same employment decision absent the protected expression. *See* Sales v. Grant, 158 F. 3d 768, 776 (4th Cir. 1998)

Throughout Ms. Vanterpool's tenure, she performed well, she received a good performance evaluation, and her supervisor stated that he looked forward to working with her in the coming year. Exhibit 1. There was no other reason for Ms. Vanterpool's termination than the comments made in the Washington Post. But for the comments, Ms. Vanterpool would not have been terminated and the Defendants would not have had any other reason to terminate her since she was performing her job up to her employer's expectations.

Ms. Vanterpool's speech must be looked at as a whole. Thus, where, as here, the component parts of a single speech are inextricably intertwined, the Court cannot parcel out the speech, applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical. Therefore, the First Amendment violation test is applied to the entire statement. Riley v. Nat'l Fed'n of Blind, 487 U.S. 781, 796 (U.S. 1988).

The starting point in determining whether the protected speech was substantial factor is the speech itself. If the speech is protected then any termination based on that protected speech violates the First Amendment. Even accepting the Defendants' allegations that part of the speech was somehow not protected would subject the speech to a mixed motive analysis.

Looking at the facts in the light most favorable to Ms. Vanterpool, the Defendants terminated Ms. Vanterpool after they discovered the comments in the blog. Thus, the comments themselves were the culminating factor in Ms. Vanterpool's termination. There is no support for the Defendants' theory that Ms. Vanterpool was terminated for violating the media policy or for providing false information.

It is a stretch of logic and imagination to conclude that Ms. Vanterpool's comments in a blog to a newspaper violated the AG's media policy of not talking to the media. The comments were made as a private citizen in response to a matter of public concern. The comments about the media policy were not made in response to any reporters question or inquiry. The media policy speaks about talking to reporters and answering their questions, and Ms. Vanterpool did not violate the AG's media policy when she commented on the political article.

The Defendants attempt to divert the Court's attention from the task at hand by alleging that Ms. Vanterpool "misled" this Court and by blithely characterizing Ms. Vanterpool's comments as false and misleading.  Not so. Ms. Vanterpool has stated allegations in support of her claim which show that her protected speech was a substantial factor in her termination.

The Defendants' statements that Ms. Vanterpool made false statements to Mr. James are not supported.  Ms. Vanterpool has consistently stated that she did not post the comments and she refused to divulge to Mr. James the person who posted the comments. Where is the falsity? There is none.  The act of posting is a technical act of hitting a button and sending the comments into cyberspace. Thus, Ms. Vanterpool's answer to Mr. James that she did not post the comments was truthful at the time and is truthful now.

The Defendants' allegations that Ms. Vanterpool's statements are false are conclusory. Pulling from the Complaint and Amended Complaint, the Defendants conclude that Ms. Vanterpool lied to Mr. James. They then summarily conclude that as a result of these false statements, Mr. James had more than sufficient reason to terminate Ms. Vanterpool. The arguments miss the mark. The reasons for Ms. Vanterpool's termination must be examined at the time Mr. James made the termination decision. What did he know and what was he told that would lead to a conclusion that Ms. Vanterpool had violated any policies. First, Mr. James had information about the "handle" used in the comment. He connected Ms. Vanterpool with the "handle." Then, Mr. James asked Ms. Vanterpool whether she posted the comments, which she denied. This answer has been consistent. When asked whether she knew who posted the comments, Ms. Vanterpool refused to answer, a position she has maintained throughout.

When Mr. James terminated Ms. Vanterpool, he had no evidence that Ms. Vanterpool was lying because she was not. The Defendants after-the-fact attempts to show that the Ms. Vanterpool made false statements to Mr. James by relying on what was plead in the Complaint and in the Amended Complaint fail because the facts on which Mr. James relied on in terminating Ms. Vanterpool were not false.

While couched as a violation of the AG's policies, Exhibit 3 clearly states that Mr. James terminated Ms. Vanterpool for comments made in the blog, which he characterized as "outside communications."

Lastly, even if part of the Ms. Vanterpool's statement was false, the entire speech would still be protected by the first amendment. United States v. Alvarez, 132 S. Ct. 2537, 2545 (U.S. 2012).

**E. Ms. Vanterpool's Refusal to Answer Was Protected by First Amendment**

Ms. Vanterpool also has an independent First Amendment ground based on her refusal to tell Mr. James who posted the comments. Ms. Vanterpool's refusal to answer constituted conduct protected by the First Amendment. See Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 796-98 (1988); See also Bridges v. Hubbard, 2013 U.S. Dist. LEXIS 100257, 25-27 (E.D. Cal. July 16, 2013).

**F. The Defendants Are Not Entitled to Qualified Immunity Because Ms. Vanterpool's Right to Comment on a Blog Was Clearly Established at the Time She Was Terminated**

The Defendants here are not entitled to qualified immunity. Qualified immunity protects government officials from civil damages in a § 1983 action as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999).

In determining whether a defendant is entitled to qualified immunity, a court must decide (1) whether the defendant has violated a constitutional right of the plaintiff and (2) whether that right was clearly established at the time of the alleged misconduct. Walker v. Prince George's Cnty., 575 F.3d 426, 429 (4th Cir. 2009).

To determine whether law is settled, the Court ordinarily looks to decisions by the U.S. Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state. Wilson v. Layne, 141 F. 3d 111, 114 (4th Cir. 1998).

In analyzing whether the defendant has violated a constitutional right of the plaintiff, the court should identify the right "at a high level of particularity." Edwards, 178 F. 3d at 251. For a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right "must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

The "clearly established" prong of the qualified immunity analysis turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Wilson v. Layne, 526 U.S. 603, 614 (1999).

When the interest in allowing speech is strong and there is no evidence of a threat to the government's mission as a result of the speaking, the court should not grant qualified immunity merely because the defendant alleges that the fact intensive analysis of the Pickering balancing test makes it difficult for an officer to determine whether particular speech must be allowed. Myers v. Town of Landis, 957 F. Supp. 762, 769 (M.D.N.C. 1996), *aff'd in part and dismissed in part*, 107 F.3d 867 (4th Cir. 1997) (Table).

Here, Ms. Vanterpool has plead sufficient facts in support of her claims that the Defendants violated her First Amendment Rights to comment on an article between two political rivals, and her refusal to tell her supervisor who posted the protected speech.

The Defendants also violated Ms. Vanterpool's political association rights when they terminated her for not supporting Mr. Cuccinelli's GOP gubernatorial candidacy or for supporting Bill Bolling, his opponent.

At the time of Ms. Vanterpool's termination in or around June 2012, it was clearly established that an Assistant Attorney General, as a public employee, had the right, as a private citizen, to comment on a newspaper article about a rivalry between two political opponents for

gubernatorial office. See e.g. Pickering v. Bd. of Educ., 391 U.S. 563, 564-65 (1968); Citizens United v. FEC, 558 U.S. 310,329 (2010); McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995).

It was also clearly established that, in her role as an Assistant Attorney General, Ms. Vanterpool could not be terminated where neither party affiliation or political allegiance was an appropriate requirement for the effective performance of the position of Assistant Attorney General. See Stott v. Haworth, 916 F. 2d 134, 142 (4th Cir 1990). This is especially true where, as here, Ms. Vanterpool never advised the Attorney General on policy matters nor was she involved in communicating the Attorney General's policies or positions to the public, and the Attorney General did not rely on Ms. Vanterpool for assistance in implementing his policies. See Knight v. Vernon, 213 F. 3d 544, 550 (4th Cir. 2000).

As well-trained and experienced attorneys, it should have been clear to the Defendants that it was unreasonable to terminate Ms. Vanterpool for having commented on The Washington Post article in her role as private individual and as a resident of the Commonwealth of Virginia interested in the outcome of the GOP gubernatorial nomination race.

Likewise, it was clearly established that Ms. Vanterpool's refusal to tell Mr. James who posted the protected speech was itself protected by the First Amendment. *See* Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 796-98, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988).

The Defendants' dispute about what Ms. Vanterpool said or does not save them. The Supreme Court has held that if an employment action is based on what an employee supposedly said, and a reasonable supervisor would recognize that there is a substantial likelihood that what

was actually said was protected, the manager must tread with a certain amount of care before making an decision to terminate an employee. Waters v. Churchill, 511 U.S. 661, 677-678 (1994).

### G. Mr. Cuccinelli is Personally Liable

To establish personal liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

In her Amended complaint, Ms. Vanterpool alleges sufficient facts to support personal involvement by Mr. Cuccinelli. Amended Compl. ¶¶ 6 (Mr. Cuccinelli upheld the termination), 23, 31, 35,41,43.

Even if there is insufficient personal involvement, Mr. Cuccinelli may still be held liable. In the Fourth Circuit, a claim for supervisory liability requires the following: (1) actual or constructive knowledge of a risk of constitutional injury; (2) deliberate indifference to that risk; and (3) an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999). Where a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of "a pervasive and unreasonable risk of harm from some specified source," they can be held liable personally. Id. at 220.

Here Mr. Cuccinelli was aware of the violations (Amended Compl. ¶6), and his failure to act amounted to tacit authorization of the violation of Ms. Vanterpool's First Amendment rights (Amended Compl. ¶¶ 7, 23, 26) .

The Defendants argue that Mr. Cuccinelli cannot be held personally liable because Ms. Vanterpool has alleged insufficient facts to show Mr. Cuccinelli's personal involvement. To bolster their argument, the Defendants cite to their answer. At this stage of the litigation, it is not appropriate for the Court to consider the Defendants' answer when ruling on a motion to dismiss where the facts are taken as true. Neither is it appropriate for the Court to consider the information cited by the Defendants at footnote 6 of their Memorandum.

**H. Ms. Vanterpool Was Constructively Discharge**

The facts as alleged by Ms. Vanterpool state a constructive discharge as political/associational retaliation under §1983. *See* Phillips v. Nielsen, 1996 U.S. App. LEXIS 27226 (4th Cir. Oct. 18, 1996).

**I. Plaintiff Should Be Allowed to Amend Her Complaint**

Should the Court dismiss any of the Plaintiff's claims, the Plaintiff should be given the opportunity to amend since any amendments would not be futile.

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has declared that "this mandate is to be heeded." Foman v. Davis, 371 U.S.178, 182 (1962). A court may deny a motion to amend if it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." Id.

Here there is neither bad faith, prejudice nor futility. Therefore, the Plaintiff should be allowed to amend her Complaint if the motion to dismiss is granted.

## V. CONCLUSION

WHEREFORE, for the following reasons, the Plaintiff respectfully requests that this Honorable Court deny the Defendants' motion to dismiss and award the Plaintiff her attorney's fees and costs incurred in defending this matter.

Respectfully submitted,

SAMANTHA VANTERPOOL
By Counsel
JORDAN, PATRICK & COOLEY, LLP

By:____________/s/______________________

Richard E. Patrick
VSB #25293
Counsel for Plaintiff
JORDAN, PATRICK & COOLEY, LLP
10560 Main Street, Suite 310
Fairfax, Virginia 22030
(703) 865-8699-Telephone
(703) 865-8729-Facsimile
rpatrick@jpcattorneys.com-Email

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of November, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

G. William Norris, Jr.
VSB#41754
Counsel for Defendants
Office of Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 371-0817
Fax: (804) 371-2087
Email: gnorris @oag.state.va.us

____________/s/______________________________

Richard E. Patrick
VSB #25293
Counsel for Plaintiff
JORDAN, PATRICK & COOLEY, LLP
10560 Main Street, Suite 310
Fairfax, Virginia 22030
(703) 865-8699-Telephone
(703) 865-8729-Facsimile
rpatrick@jpcattorneys.com-Email