UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| SAMANTHA VANTERPOOL,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>KENNETH T. CUCCINELLI, II<br><br>and<br><br>CHARLES E. JAMES, JR.,<br><br>　　　　　　　　　　　　　Defendants. | Civil Action No. 3:13-CV-513 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Dismiss ("Motion") (ECF No. 12) filed by Defendants Kenneth T. Cuccinelli, II ("Cuccinelli") and Charles E. James ("James"). Defendants seek dismissal of a Complaint filed by Plaintiff Samantha Vanterpool ("Vanterpool") for her allegedly wrongful termination from employment with the Virginia Office of the Attorney General ("OAG").

### I.　BACKGROUND[1]

Vanterpool is an attorney who was hired as an Assistant Attorney General by the OAG in 2006 and worked primarily on legal education matters. At all times relevant to this action, she was also an active member of the Republican Party. Cuccinelli was the Attorney General of Virginia from 2010 until 2014 and was the Republican Party's nominee in the 2013 Virginia gubernatorial race. James was the Chief Deputy Attorney General at all times relevant to this

---

[1] Unless otherwise noted, all facts taken from Vanterpool's Amended Complaint and the exhibits attached thereto are accepted as true and viewed in the light most favorable to Vanterpool. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

1

action. Cuccinelli vested James with the authority to manage the OAG, as well as attorneys and staff working for the OAG.

On Friday, May 4, 2012, the Washington Post published an article on its website entitled "Bill Bolling to Ken Cuccinelli: Have a nice, long trip." The article discussed Bill Bolling's battle with Cuccinelli for the Republican Party gubernatorial nomination. On Saturday, May 5, 2012, a comment ("Comment") was posted to this article reading,

> Love it! Let the egomaniac [Cuccinelli] take the BS out of state. While Bolling is helping the GOP, Cuccinelli is promoting Cuccinelli. For example, he is NEVER in the AG's office and solely uses the position for self promotion. He has issue (sic) a policy that NO AG employee can talk to the media about anything at anytime. To date, he hasn't endorsed Romney. Good job Ibbie!

(Am. Compl. Ex. 2.) The Comment was posted by a person using the handle "bzbzsammy."

On May 15, 2013, James held a meeting with Vanterpool in which he asked her whether she was responsible for the Comment. An employee of the OAG responsible for finding and compiling published information about the Attorney General had previously discovered the Comment and informed James that she believed it was attributable to Vanterpool. When asked, Vanterpool denied personally posting the comment. James relieved Vanterpool of her OAG badge, access card, and other work-related items.

In a letter dated May 17, 2012, James indicated that he had "decided to terminate [Vanterpool's] employment" because he had found Vanterpool's comments during the May 15 meeting to be "evasive and not truthful." (Am. Compl. Ex. 3.) The letter indicates that Vanterpool's actions were in violation of Sections III (1) and (17) of the OAG Standards of Conduct as well as the OAG Media Policy. The letter gave Vanterpool the opportunity to resign, but indicated that she could only resign in lieu of termination if the election was made prior to May 21, 2012.

Also on May 17, 2012, James met with Vanterpool. In that meeting, James asked Vanterpool who had authored the Comment. She declined to reveal who had posted the Comment because it was "anonymous, posted on the weekend, and not relevant to

[Vanterpool's] official duties." (Am. Compl. ¶ 19.) James replied that Vanterpool "had already 'dug' a hole for herself and that the 'dye' was cast." (Am. Compl. ¶ 19.)

On or about May 25, 2012, Vanterpool submitted a resignation letter to James. In the letter, Vanterpool asserted her belief that she was being wrongfully terminated and sought to preserve her rights to pursue an equal employment action, a Title VII action, and an action based on violation of the First Amendment. (Am. Compl. Ex. 6.) James rejected Vanterpool's attempted resignation in a letter dated May 30, 2012, because she could not "both resign and allege to have been wrongfully terminated." (Am. Compl. Ex. 7.) James indicated that Vanterpool would be terminated unless by June 1, 2012, she resigned "without conditions." (Am. Compl. Ex. 7.) Through counsel, Vanterpool confirmed her resignation the following day "[c]onsistent with her letter of May 25, 2012." (Am. Compl. Ex. 8.) Vanterpool alleges that her forced resignation took place with the knowledge, consent, and acquiescence of Cuccinelli.

On August 2, 2013, Vanterpool filed her Complaint in this Court. In the Complaint, she alleged one count of retaliation in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, but she did not indicate what her connection to the Comment was, alleging only that an OAG employee "erroneously concluded that the handle 'bzbz_sammy' was connected to [her]." (Compl. ¶ 12.) On August 30, 2013, Defendants moved to dismiss the Complaint on the grounds that Vanterpool was not entitled to First Amendment protection if she did not make the Comment.[2] Subsequently, Vanterpool filed an Amended Complaint. In the Amended Complaint, Vanterpool indicates that she "helped in deciding and putting together the contents of the comments. She agreed with the contents of the comments; she supported the comments, and she authorized the posting of the comments." (Am. Compl. ¶ 13.) However, Vanterpool also indicates that she "correctly denied that she posted the comments." (Am. Compl. ¶ 13.) Defendants filed the instant Motion to Dismiss asserting that Vanterpool's Complaint fails to state a claim upon which relief can be granted.

---

[2] Defendants also raised other arguments later asserted in support of the instant Motion.

## II. LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. The Court need not accept as true legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the fact of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citing *Richmond, F. & P. R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Qualified immunity is such an affirmative defense because, if applicable, qualified immunity includes "an

entitlement not to stand trial or face the other burdens of litigation." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc).

### III. DISCUSSION

At issue are the first three Counts of the Amended Complaint.[3] Count One asserts First Amendment retaliation in violation of 42 U.S.C. § 1983 for Vanterpool's participation in writing the Comment. Count Two asserts First Amendment retaliation in violation of 42 U.S.C. § 1983 for refusing to divulge who authored the Comment. Count Three asserts political affiliation retaliation in violation of the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983.

For several independent reasons, each of these claims must be dismissed. As an initial matter, both Cuccinelli and James are entitled to qualified immunity. In the alternative, an assessment of the merits of each Count shows that Vanterpool's Amended Complaint fails to state any claim upon which relief can be granted.

A. APPLICABLE LAW

The First Amendment protects both an individual's freedom of speech and also "the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). This protection, however, "is not absolute and must be tempered by the government's interest in governmental effectiveness, efficiency, order, and the avoidance of disruption." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998). The First Amendment also contains protections for an individual's right to association and political affiliation. "A State may not condition public employment on an employee's exercise of his or her First Amendment rights. Further, absent some reasonably appropriate requirement,

---

[3] Count Four is intended to assert a claim for constructive discharge as political retaliation in violation of 42 U.S.C. § 1983. (Pl.'s Mem. Opp. Mot. Dismiss 18.) At the hearing held on December 13, 2013, however, Vanterpool indicated through counsel that she intended to pursue Count Four only to the extent that Defendants argued that Vanterpool voluntarily resigned. Defendants did not advance the argument that Vanterpool's termination was voluntary. Accordingly, the Court assumes that Vanterpool's termination was involuntary, and the discussion and disposition of Count Four is subsumed into that which regards Count Three.

5

government may not make public employment subject to the express condition of political beliefs or prescribed expression." *Jenkins v. Medford*, 119 F.3d 1156, 1160 (4th Cir. 1997) (footnotes and internal quotation marks omitted) (quoting *O'Hare Truck Serv. V. City of Northlake*, 518 U.S. 712, 717 (1996)).

To determine whether an individual has successfully stated a claim for retaliatory discharge in violation of the First Amendment, the Fourth Circuit has developed a three prong test. *See McVey*, 157 F.3d at 277-78. The court "must determine (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision." *Id.* (citing *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992); *Cromer v. Brown*, 88 F.3d 1315, 1325 (4th Cir. 1996)). The second prong requires assessment of various factors bearing on the context of the speech, the employee's position, and the effect of the speech on employee's workplace.[4] *Bland v. Roberts*, 730 F.3d 368, 374 (4th Cir. 2013) (citing *Rankin v. McPherson*, 483 U.S. 378, 388-91 (1987). Because of these considerations, the *McVey* test "tends to merge with the established jurisprudence governing the discharge of public employees because of their political beliefs and affiliation" *Id.* (quoting *McVey*, 157 F.3d at 278) (internal quotation marks omitted).

The Supreme Court has made clear that political affiliation discharges are generally prohibited. *See Elrod v. Burns*, 427 U.S. 347, (1976) (plurality opinion); *Branti v. Finkel*, 445 U.S. 507 (1980). However, a narrow exception to this general prohibition exists. Termed the Elrod-Branti exception, this principle allows certain public employees to be discharged solely on the basis of political patronage if "party affiliation is an appropriate requirement for the effective

---

[4] As noted, *infra*, the Fourth Circuit has frequently held that the fact-specific balancing test required by this second prong often dooms section 1983 claims. *See Bland*, 730 F.3d at 394 n.21; *McVey*, 157 F.3d at 277; *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995).

performance of the public office involved." *Branti*, 445 U.S. at 518. Whether a particular position falls within the Elrod-Branti exception is a question of law which may be properly determined on a motion to dismiss. *See Jenkins*, 119 F.3d at 1165; *Stott v. Haworth*, 916 F.2d 134, 147 (4th Cir. 1990). "In cases in which the Elrod-Branti exception applies, and an employer thus can terminate his employees for political disloyalty, he may also terminate them for speech that constitutes such disloyalty." *Bland*, 730 F.3d at 375 n.5 (citing *Jenkins v. Medford*, 199 F.3d 1156, 1164 (4th Cir. 1997) (en banc)).

B. QUALIFIED IMMUNITY

Before the Court may turn to the merits of Vanterpool's Amended Complaint, the threshold matter of qualified immunity must be addressed. The Supreme Court and the Fourth Circuit have repeatedly held that courts should assess a defendant's entitlement to qualified immunity before reaching an analysis on the merits. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Torcasio v. Murray*, 57 F.3d 1340, 1352 (4th Cir. 1995); *DiMeglio*, 45 F.3d at 797. The defense of qualified immunity "exists to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery." *Jenkins*, 119 F.3d at 1159 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)) (internal quotation marks omitted). Government officials who are sued in their individual capacities may invoke the defense in a motion to dismiss. *See Bland*, 730 F.3d at 391.

To grant a defendant qualified immunity a court must find that the defendant's conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *See Edwards*, 178 F.3d at 250. Courts must identify the constitutional right at issue with "a high level of particularity," but may rest their determination on a finding either that no constitutional right was violated or on a finding that the constitutional right was not clearly established at the time of the alleged misconduct. *Id.* at 251; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As to the latter finding, if the constitutional right is not "sufficiently clear that a reasonable official would understand that

what he is doing violates that right," qualified immunity is appropriate. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Fourth Circuit's opinion in *Bland*, 730 F.3d 368, conclusively establishes that Defendants are entitled to qualified immunity. 730 F.3d at 391-94. In *Bland*, several sheriff's deputies brought suit for violation of their First Amendment rights to speech and association after a sheriff refused to reinstate them because of their political speech and their affiliation with that sheriff's political opponent. *Id.* at 371-72. Although the *Bland* court performed an analysis of the merits of both the free speech and political affiliation claims, it ultimately affirmed the district court's grant of qualified immunity. *Id.* at 391.

The ambiguity in Fourth Circuit precedent resolved by the *Bland* court regarded proper application of the Elrod-Branti exception. The Fourth Circuit developed a two-part test to determine whether the Elrod-Branti exception applies in *Stott v. Haworth*, 916 F.2d 134. The Stott test looks first at whether the plaintiff's position relates to partisan political interests or concerns and looks second at whether the position resembles "a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." 916 F.2d at 142 (quoting *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241-42 (1st Cir. 1986) (en banc), *cert. denied*, 481 U.S. 1014 (1987).

The *Bland* court found that the Fourth Circuit's precedent as to proper application of the Stott test was not clearly established as of December 2009. 730 F.3d at 393. Specifically, the court found that it was unclear whether the second part of the Stott test required courts to look at the inherent powers granted generally to an office, or to look more particularly at the powers granted to an individual. *Id.* at 391. The Fourth Circuit's 1997 opinion in *Jenkins*, 119 F.3d 1156, had created this ambiguity by "sen[ding] very mixed signals. . . . [T]he Jenkins majority opinion reads almost like two separate opinions that are in tension with one another." *Bland*, 730 F.3d at 391. In parts, the *Jenkins* court—which held that sheriff's deputies could fall under the Elrod-

8

Branti exception—seemed to analyze the specific duties of the deputies who had brought suit; but in other parts, the court made broad pronouncements such as, "North Carolina deputy sheriffs may be lawfully terminated for political reasons . . . ." *Jenkins*, 119 F.3d at 1164. Ultimately, the *Bland* court held that because of the uncertainty created by *Jenkins*, "in December 2009 a reasonable sheriff could have believed he had the right to choose not to reappoint his sworn deputies for political reasons," regardless of the specific duties they held. *Bland*, 730 F.3d at 391.

Although Vanterpool was an Assistant Attorney General, rather than a sheriff's deputy, the qualified immunity analysis in this case is analogous to *Bland*. Much like the sheriff in *Bland*, Cuccinelli held elective office and derived his authority from state statute. *See* Va. Code. § 2.2-507 (2013) ("All legal services in civil matter for the Commonwealth . . . shall be rendered and performed by the Attorney General . . . [who] may represent [parties] personally or through one or more of his assistants . . . ."). As the sheriff was, Cuccinelli was authorized by statute to perform particular duties and to appoint subordinates to perform those duties on his behalf. *See id.* § 2.2-501 (2013) ("The Attorney General shall appoint . . . assistant Attorneys General . . . ."). Accordingly in Virginia, Assistant Attorneys General may be authorized to act as the "alter-ego" of the Attorney General.

*Jenkins* created support for two alternative means of applying the Elrod-Branti exception: the broad reading of *Jenkins* justified political patronage dismissals for any employee acting as an elected official's "alter ego" without reference to any specific job duties; the narrow reading of *Jenkins* justified political patronage dismissals only where analysis of the employee's particular job duties demonstrated a confidential, policymaking, or public contact role. *See Bland*, 730 F.3d at 391-92. In light of this ambiguity, from December 2009 until the *Bland* court's ruling in September 2013, proper application of the Elrod-Branti exception was not sufficiently clear for government officials to know whether certain political patronage dismissals would violate the Constitution. In this case, assuming Vanterpool's allegations to be true,

Defendants terminated Vanterpool in May 2012 because her speech demonstrated political affiliation with Cuccinelli's political rival. The Parties have pointed to no authority subsequent to December 2009 which would have indicated that the narrow reading of *Jenkins* controlled the correct application of the Elrod-Branti exception.[5] Accordingly, the Court finds that the correct application of the Elrod-Branti exception was not clearly established in the Fourth Circuit at all times relevant to this action, and Defendants are entitled to qualified immunity.[6]

C. MERITS OF THE AMENDED COMPLAINT

Turning to the merits of Vanterpool's Amended Complaint, the Court finds that the Motion to Dismiss must be granted for several reasons. First, application of the Elrod-Branti exception shows that Assistant Attorneys General in positions such as Vanterpool's may be fired for their political affiliation, making Counts One and Three fails as a matter of law. Second, Vanterpool fails to allege sufficient facts to plausibly state a claim that Defendants terminated her in retaliation for her silence, making Count Two fail as a matter of law. Third, Vanterpool fails to allege sufficient facts to plausibly state a claim that Cuccinelli was personally involved in her termination, making all Counts fail as a matter of law as to the former Attorney General.

1. *Counts One and Three*

Vanterpool brings independent claims for retaliation on the basis of her speech—Count One—and for retaliation on the basis of her political affiliation—Count Three. However, the speech for which Vanterpool claims she was terminated is limited only to the Comment.

---

[5] The *Bland* court considered and rejected the argument that cases subsequent to *Jenkins* had clarified the *Stott* standard's proper application: "Knight v. Vernon, while important to our decision regarding the merits of [the plaintiffs'] constitutional claims, did not clearly establish that the broader reading of Jenkins was incorrect. . . . [C]onsidering the conflicting signals that Jenkins and Pike[, 301 F.3d 182,] sent, we conclude that a reasonable sheriff in December 2009 could have believed that he was authorized to terminate any of his deputies for political reasons." 703 F.3d at 392-93.

[6] While the foregoing discussion of qualified immunity concerns claims for political affiliation retaliation, Defendants likely would be entitled to qualified immunity for retaliation on the basis of political speech as well. *See Bland*, 730 F.3d at 394 n.21; *McVey*, 157 F.3d at 277; *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995). The second prong of the McVey test involves a fact-intensive balancing of government and personal interests. "[O]nly infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a particularized balancing that is subtle, difficult to apply, and not yet well-defined." *DiMeglio*, 45 F.3d at 806.

Assuming, without deciding, that some part of the Comment related to a matter of public concern and could, therefore, merit First Amendment protection, the Comment constituted political disloyalty to Attorney General Cuccinelli. This fact was effectively conceded by Vanterpool at the hearing held on December 13, 2013, at which her counsel argued that the Comment garners First Amendment protection from its status as political speech. Accordingly, whether the Elrod-Branti exception applies to Vanterpool is dispositive of both Counts One and Three. *See Bland*, 730 F.3d at 375 n.5 ("In cases in which the Elrod-Branti exception applies, and an employer thus can terminate his employees for political disloyalty, he may also terminate them for speech that constitutes such disloyalty.").

In *Stott v. Haworth*, 916 F.2d 134, the Fourth Circuit developed a two-part test to determine whether an individual could be terminated on the basis of political affiliation under the Elrod-Branti exception. The first part of the required inquiry involves examining whether the "position involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their implementation." *Id.* at 141 (quoting *Jimenez Fuentes*, 807 F.2d at 241-42). The second part of the required inquiry involves examination of the position's particular responsibilities "to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Id.* at 142. The position that must be examined is that which the terminated employee actually held. *See Bland*, 730 F.3d at 377. At bottom, courts must determine whether "there is a rational connection between shared ideology and job performance." *Stott*, 916 F.2d at 142 (quoting *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)).

Applying this test to the case at bar, the Court finds that Vanterpool, as an Assistant Attorney General, falls within the Elrod-Branti exception and could be terminated on the basis of her political affiliation without violating the Constitution. Under the first prong of the required test, the Court finds that Vanterpool's position as Assistant Attorney General involved

government decisionmaking that potentially implicated partisan political considerations. Assistant Attorneys General in Virginia act as the alter ego of the Attorney General in representing and advising state entities in legal matters. *See* Va. Code § 2.2-507. The Attorney General may authorize his assistants to assist Commonwealth's Attorneys, *id.* § 2.2-506, to represent the interests and agencies of the Commonwealth, *id.* §§ 2.2-509, -513, to settle certain claims against the Commonwealth, *id.* § 2.2-514, and to represent the Commonwealth itself, *id.* § 2.2-513. Each of these duties involves discretionary decisionmaking on issues for which there is "room for political disagreement." *Stott*, 916 F.2d at 141 (quoting *Jimenez Fuentes*, 807 F.2d at 241-42). As such, the first prong of the Stott test is satisfied.

Under the second prong of the required test, the Court finds that Vanterpool's position as Assistant Attorney General was such that party affiliation was an appropriate requirement. Although Vanterpool insists that she was merely a "line attorney," documents she appended to her Complaint undercut this assertion.[7] Specifically, Vanterpool attached a 2011 Performance Self-Evaluation to her Complaint, in which she describes her job performance for the preceding year.[8] In that document, Vanterpool describes her participation in various tasks that indicate she held a position of policymaker and privy to confidential information. Vanterpool indicates that she drafted and developed policies for state entities; she served on an investigative panel; and she provided legal advice and representation in resolving disputes against state entities. Beyond evidencing the appropriateness of the semantic labels of "policymaker" and "confidential employee," the performance of these tasks likely could be influenced by an individual's personal political affiliation. Vanterpool's own evidence shows that her position routinely required discretionary decisionmaking and access to confidential information; Attorney General Cuccinelli had a legitimate interest in ensuring that Vanterpool's conduct

---

[7] While the Court accepts as true all facts alleged by the plaintiff on a motion to dismiss, it may properly consider documents attached to the Complaint so long as they are integral to the Complaint and authentic. *See Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

[8] Vanterpool indicates that she did not have a formal position description.

would loyally implement the policies and ideals for which he was elected.[9] As such, Vanterpool's position as an Assistant Attorney General falls squarely within the Elrod-Branti exception.

Accordingly, the Court finds that Counts One and Three fail as a matter of law because Vanterpool was subject to termination for her political affiliation as justified under the Elrod-Branti exception. The Court, therefore, will dismiss Counts One, Three, and Four. *See supra* note 3.

### 2. Count Two

Count Two of Vanterpool's Amended Complaint asserts that she was terminated in retaliation for her refusal to divulge the name of the person who authored and posted the Comment. Vanterpool admits to "putting together the contents" of the Comment, to agreeing with and supporting the contents of the Comment, and to authorizing the posting of the Comment. (Am. Compl. ¶ 13.) However, when questioned by James on May 17, 2012, Vanterpool asserted that she did not actually type or post the Comment on the Internet, and she refused to divulge the name of the individual who did.

"The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'" *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (quoting *Board of Education v. Barnette*, 319 U.S. 624, 637 (1943)). As such, the First Amendment protects individuals against compelled statements of fact as well as retaliation for refusal to speak. *See Riley v. Nat'l Fed'n of B*lind, 487 U.S. 781, 797-98 (1988); *Suarez Corp. Indus.*, 202 F.3d at 685. However, to successfully bring such a claim for retaliation, a plaintiff must allege sufficient facts to state a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570. A claim has facial plausibility when the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

---

[9] Vanterpool argues that she was not a policymaker or confidential employee because she did not personally draft OAG policies or consult with the Attorney General. This argument misconstrues the meaning of "policymaker," however. The Fourth Circuit has made clear that the Elrod-Branti exception applies when an individual exercises discretion in carrying out an elected official's policies and goals. *See Jenkins*, 119 F.3d at 1162. In this way, such an individual will "make some decisions that actually create policy." *Id.* (quoting *Upton v. Thompson*, 930 F.2d 1209, 1215 (7th Cir. 1989)).

In light of this authority, Count Two fails as a matter of law because the Amended Complaint fails to allege any facts from which the Court can reasonably infer that the motivation for Vanterpool's termination was her silence rather than her speech. Vanterpool alleges that on May 15, 2012, she was questioned by James and denied posting the Comment. Vanterpool does not allege either that she was asked who posted the Comment, or that she refused to disclose this information during this initial meeting. Vanterpool further alleges that James confiscated work-related items, such as her OAG badge and her access card, at this initial meeting. Vanterpool does not allege that she invoked her right to silence until a meeting on May 17, 2012. In this second meeting, James responded to Vanterpool's silence by stating that Vanterpool "had already 'dug' a hole for herself and that the 'dye' was cast." (Am. Compl. ¶ 19.)

Far from indicating that Vanterpool's silence precipitated her termination, these facts indicate that Vanterpool's termination was a foregone conclusion before she ever invoked her right to silence. Further, nothing in the documentation provided by James indicates that Vanterpool's silence was the cause of her termination. Rather, the May 17, 2012 letter that terminated Vanterpool's employment cited her violation of OAG policies as the reason for her termination; these policy violations included dishonesty and unauthorized disclosure of internal communications. In fact, nothing in the Amended Complaint indicates that Vanterpool's silence was the cause of her termination.

While the Court accepts as true all facts alleged in the Amended Complaint, Count Two offers only "'naked assertion[s]' devoid of 'further factual enhancement'" tending to show that Vanterpool was terminated for her silence. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 557). The alleged facts are merely consistent with the Defendants' liability on Count Two, but stop short of the line between possibility and plausibility of entitlement to relief. *See id.* (quoting *Twombly*, 550 U.S. at 557). As such, Count Two fails as a matter of law and must be dismissed.

//

### 3. *Claims Against Cuccinelli*

For similar reasons, all Counts must be dismissed as to Defendant Cuccinelli. "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged *acted personally* in the deprivation of the plaintiff's rights." *Garraghty v. Virginia, Dep't of Corrections*, 52 F.3d 1274, 1280 (4th Cir. 1995) (emphasis added) (*quoting Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)) (internal citations omitted). Vanterpool alleges that her termination took place "with the knowledge, confirmation and acquiescence of Attorney General Cuccinelli," and that "the Attorney General took no action" to reinstate her. (Am. Compl. ¶¶ 23, 26.)

However, Vanterpool alleges no specific facts regarding Cuccinelli's involvement in her termination. While section 1983 liability may attach if an official, acting under color of state law, "caused the deprivation of a federal right," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), merely alleging knowledge of Vanterpool's termination is insufficient to plausibly allege personal involvement or causation. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976) (finding that liability cannot attach if a defendant merely fails to prevent a constitutional deprivation). Moreover, there are no facts in the Amended Complaint that support the plausible inference that Cuccinelli had knowledge of, or was involved in any capacity with, Vanterpool's termination before it occurred.[10] The naked assertions offered in support of Cuccinelli's liability are simply insufficient to maintain a cause of action against him. Accordingly, the Amended Complaint in its entirety fails as a matter of law as to Cuccinelli.[11]

//

---

[10] At least one circuit has found that ratification of an unconstitutional termination is sufficient to impose section 1983 liability. *See Wulf v. City of Wichita*, 883 F.2d 842, 863-64 (10th Cir. 1989). However, ratification is a legal term of art which cannot be successfully alleged without supporting factual allegations. Vanterpool has failed to allege any facts tending to support the reasonable inference that Cuccinelli ratified her termination.

[11] Vanterpool alternatively argues that Cuccinelli may be held responsible under a claim for supervisory liability. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). However, supervisory liability under section 1983 requires a showing of a pervasive pattern or policy condoning constitutional deprivations. Vanterpool has made no such allegations and, therefore, her argument fails.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants are entitled to qualified immunity and, additionally and alternatively, that Vanterpool fails to state a claim against Defendants on all Counts and as to Cuccinelli, individually. Accordingly, the Court will GRANT Defendants' Motion and DISMISS Vanterpool's Complaint.

Additionally, the Court will DENY Vanterpool's informal request to amend the Amended Complaint. A court may deny a motion to amend if amendment would be futile, if amendment would result in undue delay, or if there has been "repeated failure to cure deficiencies by amendments previously allowed." *See Foman v. Davis*, 371 U.S. 178, 182 (1962). For the reasons previously discussed in section C.1., amendment of Counts One, Three, or Four would be futile. As to Count Two, Vanterpool has given no suggestion of what she might offer to enhance the allegations of the Complaint. As such, denial is appropriate, particularly in light of Vanterpool's prior opportunity to amend and the delay that would result in granting leave for an additional amendment more than four months after filing the Amended Complaint and more than three months after Defendants filed their Motion to Dismiss.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this  7th  day of February 2014.